**Slip Op. 11 - 66**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

- - - - - - - - - - - - - - - - - - - -x

UNITED STATES STEEL CORPORATION,　　　:

　　　　　　　　　Plaintiff, :

　　　-and-　　　　　　　　　　　　　　:

NUCOR CORPORATION, 　　　　　　　　　　:

　　　　　　　Intervenor-Plaintiff, :

　　　　　　　v.　　　　　　　　　　　　:　　Court No. 08-00216

THE UNITED STATES,　　　　　　　　　　 :

　　　　　　　　　Defendant, :

　　　-and-　　　　　　　　　　　　　　:

ESSAR STEEL, LIMITED,　　　　　　　　 :

　　　　　　　Intervenor-Defendant. :

- - - - - - - - - - - - - - - - - - - -x

<u>Memorandum & Order</u>

[Motions for judgment on agency record granted;
 remanded to International Trade Administration.]

　　　　　　　　　　　　　　　　　　　　Decided:  June 14, 2011

　　　<u>Skadden, Arps, Slate, Meagher & Flom LLP</u> (<u>Robert E. Lighthizer</u>, <u>Jeffrey D. Gerrish</u>, <u>Ellen J. Schneider</u>, <u>M. Allison Guagliardo</u>, and <u>Luke A. Meisner</u>) for the plaintiff.

　　　<u>Wiley Rein LLP</u> (<u>Alan H. Price</u>, <u>Timothy C. Brightbill</u>, and <u>Maureen E. Thorson</u>) for the intervenor-plaintiff.

　　　<u>Tony West</u>, Assistant Attorney General; <u>Jeanne E. Davidson</u>, Director, <u>Patricia M. McCarthy</u>, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (<u>David D'Alessandris</u>); and Office of the Chief Counsel for Import

Administration, U.S. Department of Commerce (Thomas M. Beline), of counsel, for the defendant.

    Arent Fox LLP (Mark P. Lunn and Diana Dimitriuc Quaia) for the intervenor-defendant.

    AQUILINO, Senior Judge:  This case contests two aspects of Certain Hot-Rolled Carbon Steel Flat Products From India: Notice of Final Results of Antidumping Duty Administrative Review, 73 Fed. Reg. 31,961 (Dep't of Comm. June 5, 2008) ("Final Results"), covering a 2005-2006 period of review ("POR").

    The court's jurisdiction is pursuant to 19 U.S.C. §1516a(a)(2)(A) and 28 U.S.C. §§ 1581(c) and 2631(c).

I

    Moving for judgment on the agency record, the plaintiff United States Steel Corporation ("USSC") and the intervenor-plaintiff Nucor Corporation initially contend the International Trade Administration, U.S. Department of Commerce ("ITA") erred in dating certain exports of Essar Steel Limited from India to the United States.  The defendant also perceives inadequacy and requests remand in order to "reevaluate record evidence and change or more fully explain" its position on the issue.  Defendant's Response to . . . Motions for Judgment Upon the Administrative Record ("Gov't Br."), p. 2.  See id. at 16.

Because the request does not involve a change in or interpretation of policy and does not appear frivolous or in bad faith, cf. SKF USA Inc. v. United States, 254 F.3d 1022, 1029 (Fed. Cir. 2001), remand appears appropriate and is therefore hereby ordered.

II

USSC and Nucor also claim it was unreasonable for ITA to have adjusted Essar's U.S. sales price contrary to section 772(c)(1)(B) of the Tariff Act of 1930, as amended, i.e., by "the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the exportation of the subject merchandise to the United States." 19 U.S.C. §1677a(c)(1)(B). See 73 Fed.Reg. at 31,964 and Issues and Decision Memorandum to Final Results ("DecMemo") at comment 18. Cf. Public Record Document ("PDoc") 184. Their claim concerns the "Advance Licence" program of the Government of India ("GOI"), pursuant to which, as revealed in the administrative record, a company may be authorized to import certain quantities of raw materials for further processing without payment of import duties thereon upon condition that proper documentation is provided to establish exportation within the time specified by the license

of the required amount of further processed goods, at which point the non-collection of duties becomes final. See, e.g., Essar's Supplemental Questionnaire Response ("SQR") at Ex. 16B, pp. 65-68, and Ex. 16C, p. 1, PDoc 90.  The critical point, USSC and Nucor argue, is that, if no such proof is provided to GOI, the relevant processor remains liable for the uncollected import duties.

A

Essar claimed an adjustment for duty drawback and "reported in its U.S. sales the advance license number corresponding to each commercial invoice[.]" Essar's Questionnaire Response ("QR") at C-33, PDoc 50, Confidential Record Document ("ConfDoc") 9.  It provided the following for support: (1) a copy of a publication announcing the per-kilogram input amount(s) for "standard input output norm C-495" ("SION"), pertaining, inter alia, to subject merchandise, and a copy of relevant GOI law and regulation on its advance license program; (2) copies of advance licenses issued to Essar under that program; (3) bills supporting an ITA finding of entry into GOI customs of, inter alia, material imported pursuant to the licenses (said bills bearing handwritten numbers or notes evidently correlative to the SION calculus); and (4) a table of the amount of duty drawback Essar had purportedly received during the POR pursuant to the advance license program.

See id. at C-33, C-34, & Ex. C-13 (A, B & C), PDoc 50, ConfDoc 9; Essar's SQR at 19, Ex. 16 (A, B & C), Ex. 17, & Ex. 18, PDoc 90, ConfDoc 33. Based upon that information, Essar claimed a certain license-specific duty saving from each commercial invoice in its U.S. sales listing but claimed none from a fourth license it contended was yet to be utilized during the POR. Essar's QR at C-33, PDoc 50, ConfDoc 9. See Defendant-Intervenor Essar Steel Limited's Response to . . . Motions for Judgment on the Agency Record Pursuant to Rule 56.2, p. 15.

In its preliminary results, ITA found Essar had failed to provide sufficient evidence to show it had received "rebates" from the GOI as duty drawback and rejected the duty-drawback adjustment request. See Preliminary Results Calculation Memorandum, p. 2, PDoc 131. Essar argued in its brief to the agency, inter alia, that ITA had misapprehended GOI's advance license program as a program of direct rebate upon export whereas the program actually involves non-collection of import duty on a contingent basis, and that it, Essar, had in fact provided sufficient evidence to meet the requirements for adjustment. See Essar's Case Brief, pp. 2-6, PDoc 162. Responding, USSC and Nucor contended Essar had failed to establish entitlement thereto, in significant part because it did

Court No. 08-00216                                                    Page 6

not prove full compliance with the advance license program's post-export requirements.  See, e.g., Rebuttal Brief on Behalf of USSC, pp. 1-6, PDoc 170.

In the Final Results, ITA agreed it had mistakenly believed Essar's duty-drawback-adjustment claim had been based upon a different drawback program and acknowledged that GOI's advance license program could meet its test for a drawback adjustment.  See DecMemo at comment 18.  ITA then

> re[-]analyzed the record evidence . . . and found that Essar's advance license program used SION (the standard the GOI uses to calculate the quantity of imports that are eligible for duty drawback based on a specified quantity of exports), and that this meets the requirements of the Department's two-prong test: 1) the import duties and rebates are directly linked to, and are dependent upon, one another, and 2) the company claiming the adjustment can demonstrate that there are sufficient raw material imports to account for the duty drawback received on exports of the manufactured product.[1] . . . Essar's reported SION of import duties and rebates were directly linked to, and are dependent upon, one another.

Id. (footnotes omitted and referencing, inter alia, Essar's QR at Ex. C-13 (generally) & Essar's SQR at Ex. C-18).

---

[1] See Antidumping Methodologies: Market Economy Inputs, Expected Non-Market Economy Wages, Duty Drawback; and Request for Comments, 71 Fed.Reg. 61,716 (Dep't of Comm. Oct. 19, 2006).

B

USSC and Nucor do not contest ITA's test *per se*, which has been upheld in other circumstances, *e.g.*, Carlisle Tire & Rubber Co. v. United States, 11 CIT 168, 657 F.Supp. 1287 (1987), rather the finding that Essar met its requirements. That is, while in accordance with law within the meaning of 19 U.S.C. §1516a(b)(1)(B)(I), the finding is not supported by the requisite substantial evidence[2] on the agency record.

The defendant posits that the two prongs of the duty drawback test "focus first 'on the drawback program itself' and second on 'the specific application of the drawback program to the firm claiming the adjustment.'" Gov't Br., p. 10, quoting Far East Machinery Co. v. United States, 12 CIT 428, 431, 688 F.Supp. 610, 612 (1988). It contends ITA properly found the test satisfied in this instance in light of the evidence of Essar's subject merchandise exports in its U.S. sales database linked to the company's advance license and import data via the relevant SION

---

[2] "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It requires "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 619-20 (1966).

used by GOI for the advance license program.  <u>Id</u>., referencing DecMemo at comment 18, citing <u>Notice of Final Determination of Sales at Less Than Fair Value: Certain Hot-Rolled Carbon Steel Flat Products from India</u>, 66 Fed.Reg. 50,406 (Dep't of Comm. Oct. 3, 2001).

Given that the second prong's concern is only with respect to imported material input amounts, however, the first prong cannot reasonably be focused solely upon "the drawback program itself" -- in disregard of a claimant's specific compliance with program requirements.  <u>See</u>, <u>e</u>.<u>g</u>., <u>Rajinder Pipes Ltd. v. United States</u>, 23 CIT 656, 70 F.Supp.2d 1350 (1999) (party must show the link between its duty-free imports and its exports as part of first prong of drawback adjustment test).  In the context of a rebate program, the proper "payment" of import duty must still be proved, or any linking of a "rebate" will be problematic.  <u>See</u>, <u>e</u>.<u>g</u>., <u>Allied Tube & Conduit Corp. v. United States</u>, 25 CIT 23, 132 F.Supp.2d 1087 (2001).  Similarly, the mere finding of validity on a "non-collection"-duty-drawback program without proof of a respondent's full compliance therewith would not amount to substantial evidence on the record to support imputing a "link" between such respondent's exports and duty-free imports.

The SION formula may be considered necessary but is insufficient, on its own, to prove "duty-free" importation linked to exportation for purposes of U.S. antidumping law. SION simply equates input for a given output. SION's bare existence in the record, in the absence of proof of compliance with GOI's post-export requirements or official excuse of contingent liability for GOI customs duty on the imported input(s), cannot reasonably be concluded to amount to substantial evidence on the record of definitive lack of such liability.

The defendant argues, nonetheless, there is nothing in the statute or in the two-prong test requiring submission of export documentation to establish entitlement to the duty-drawback adjustment. Gov't Br., p. 12, referencing <u>Rajinder</u>, 23 CIT at 665, 70 F.Supp.2d at 1358 ("in making its adjustment determinations on non-collection programs, Commerce has applied the same two-prong duty drawback test as it has in standard rebate programs"). The defendant further argues the court must defer to ITA's conclusions if the evidence supports them, and it implies the agency's previous grant of the duty-drawback adjustment to Essar in the original investigation was a factor in ITA's decision in this matter. <u>See</u> <u>id</u>. at 12-13, referencing, <u>inter</u> <u>alia</u>, <u>Certain Hot-Rolled Carbon Steel Flat Products from India</u>, supra. <u>See</u> DecMemo at comment 18.

   The first point may be so, but this memorandum is not intended to delimit what would properly satisfy the two-prong test. The general rule, however, is that an agency's decisions must be consistent, or reasonably explained for deviation. E.g., Secretary of Agric. v. United States, 347 U.S. 645 (1954). The fact that Essar may have satisfied the duty-drawback test in the original investigation does not answer whether it also did so during the administrative review at bar. See, e.g., Alloy Piping Products, Inc. v. United States, 33 CIT ___, Slip Op. 09-29 at 22, 2009 WL 983078 at *9 (April 14, 2009) ("different data compiled in different periods of review . . . have no legal effect on the administrative review" under consideration), appeal docketed, No. 2010-1288 (Fed.Cir. April 6, 2010).

   Based on the present record, USSC and Nucor now cast reasonable doubt on how ITA reached its conclusion. The plain language thereof appears simply to have assumed that Essar's liability for import duties incurred during the POR was no longer conditional. At first blush, that might have appeared not unreasonable[3], but assumption is not substantial evidence. Compare

---

  [3] It appears undisputed that the record would support finding that import duties on input(s) were not paid, and that export of subject merchandise embodying transformed input(s) of the same class or kind (whether or not consisting of those duty-deferred imports) to the United States did occur.

Jinan Yipin Corp. v. United States, 31 CIT 1901, 1933, 526 F.Supp. 2d 1347, 1375 (2007) (rejecting ITA's determination based on "mere assumptions, which find no apparent support in record evidence") with Pohang Iron & Steel Co. v. United States, 23 CIT 778, 790-91 (1999)(an administrative inference must evince "some likelihood" of truth from the record, not mere possibility).

      Essar had the burden of establishing entitlement to the duty-drawback adjustment. See, e.g., Fujitsu General Ltd. v. United States, 88 F.3d 1034, 1040 (Fed.Cir. 1996). There is nothing of record, however, to suggest that subsequent collection of deferred import duties by GOI for any non-compliance of the requirements of the advance license program was precluded, de jure or de facto, simply by reason of export to the United States. If there is such proof of permanent excuse, or removal by affirmative action vis-à-vis GOI or otherwise, of Essar's contingent liability for import duties, it is not obvious from this administrative record. For example, as USSC and Nucor argued, there is no apparent proof of export submitted to the relevant Regional Authority within two months from expiration of the export obligation period, as required under the GOI program, nor does the record encompass any shipping bills bearing a relevant advance license number or evince that export itself could not have occurred

except in compliance with the advance license program. See Essar's SQR at Exhibit 16B ("Handbook of Procedures-(Vol. I)", 9/1/2004--3/31/2009, Min. of Comm. and Indus., Dept. of Comm., GOI), p. 58 (shipping documents "should be" endorsed with advance license file or authorization number "to establish co- relation of exports . . . with Authorization issued") and p. 65 ("Monitoring of Obligation")[4].

Certainly, process matters, and ITA is required to address all relevant argument, 19 U.S.C. §1677f(i)(3)(A), but its DecMemo to the Final Results herein inadequately addresses USSC's and Nucor's relevant concern(s) over whether the agency duty-drawback adjustment test may lawfully be interpreted not to require proof or corroboration of the complete removal of contingent liability for deferred import duties under the GOI advance license program (via compliance, e.g., with GOI's post-export requirements under Indian law). Cf. 19 U.S.C. §1677a(c)(1)(B) ("by reason of the exportation of the subject merchandise to the United States").

---

[4] Cf. Rajinder Pipes Ltd. v. United States, 23 CIT 656, 659-60 and 70 F.Supp.2d 1350, 1358, n. 3 (1999) (describing a program involving a "duty exemption entitlement certificate" book purportedly submitted to GOI customs officials upon export).

III

In view of the foregoing, plaintiff's and intervenor-plaintiff's motions for judgment on the agency record should be, and they hereby are, granted to the extent of remand of the Final Results to ITA to clarify or reconsider its analysis of the intervenor-defendant's entitlement to duty-drawback adjustment within the meaning of 19 U.S.C. §1677a(c)(1)(B). Specifically, if ITA's position on remand is that the evidence of record proves Essar's contingent liability for deferred import duties has been removed or permanently excused, the remand results shall clarify why that is so, or ITA may reconsider the issue of Essar's eligibility for duty-drawback adjustment altogether, should that be determined necessary on remand -- and in light of this decision.[5]

---

[5] Although not relevant to this memorandum, this court considers exhaustion arguments inapplicable with respect to USSC's and Nucor's point regarding inconsistency in the Final Results as compared with ITA's pronouncement in Certain Hot-Rolled Carbon Steel Flat Products from India, 73 Fed.Reg. 40,295 (Dep't of Comm. July 14, 2008) (final results), Issues and Decision Memorandum at comment 22 ("India does not have an effective system in place during the POR for regularly monitoring and updating the accuracy of SIONs"), the companion countervailing-duty administrative review of hot rolled steel from India, involving overlapping review periods, and issued approximately one month after the Final Results herein. See, e.g., China Steel Corp. v. United States, 28 CIT 38, 59, 306 F.Supp.2d 1291, 1310 (2004) (on challenge to basis for corroboration, exhaustion inapplicable where ITA did not explain its basis until final determination).

Court No. 08-00216                                                Page 14

      The defendant may have until August 5, 2011 to carry out that analysis and report the results thereof to the court and the parties, which may comment thereon on or before September 2, 2011.

      So ordered.

Decided:  New York, New York
            June 14, 2011


                                            /s/    Thomas J. Aquilino, Jr.
                                                       Senior Judge