Slip Op. 12 -48

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - -x

UNITED STATES STEEL CORPORATION,       :

                Plaintiff, :

     -and-                           :

NUCOR CORPORATION,                     :

       Intervenor-Plaintiff, :

            v.                  :   Court No. 08-00216

THE UNITED STATES,                     :

                Defendant, :

     -and-                           :

ESSAR STEEL, LIMITED,                  :

       Intervenor-Defendant. :

- - - - - - - - - - - - - - - - - - - -x

Memorandum & Order

[Remand to International Trade Administration for
 reconsideration of its results of initial remand.]

Decided:  April 11, 2012

    Skadden, Arps, Slate, Meagher & Flom LLP (Robert E. Lighthizer, Jeffrey D. Gerrish, and Ellen J. Schneider) for the plaintiff.

    Wiley Rein LLP (Alan H. Price, Timothy C. Brightbill, and Maureen E. Thorson) for the intervenor-plaintiff.

    Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice

(<u>David D'Alessandris</u>); and Office of the Chief Counsel for Import Administration, U.S. Department of Commerce (<u>Thomas M. Beline</u>), of counsel, for the defendant.

    <u>Arent Fox LLP</u> (<u>Mark P. Lunn</u> and <u>Diana Dimitriuc Quaia</u>) for the intervenor-defendant.


    AQUILINO, Senior Judge: This court's slip opinion 11-66, 35 CIT ___ (2011), filed herein, familiarity with which is presumed, granted plaintiff's and intervenor-plaintiff's motions for judgment on the agency record compiled sub nom. <u>Certain Hot-Rolled Carbon Steel Flat Products From India: Notice of Final Results of Antidumping Duty Administrative Review</u>, 73 Fed.Reg. 31,961 (Dep't of Comm. June 5, 2008) ("<u>Final</u> <u>Results</u>"), to the extent of remand to the International Trade Administration, U.S. Department of Commerce ("ITA") to clarify or reconsider its analysis of the intervenor-defendant Essar Steel Limited's entitlement to duty-drawback adjustment within the meaning of 19 U.S.C. §1677a(c)(1)(B).

    In conformity therewith, the defendant has filed ITA's Final Results of Redetermination Pursuant to Court Remand, upon which each of the parties to this case has now filed with the court written comments. Indeed, those on behalf of the intervenor-defendant have caused the defendant to concede a "ministerial error" and therefore to itself request a "voluntary remand" to

correct the matter.  See Defendant's Response to Comments Upon the Remand Determination, pp. 12-13.  Each of the other parties also seeks further reconsideration.

I

ITA did reconsider Essar's duty-drawback claim by re-opening the administrative record and obtaining from it redemption applications lodged with the Government of India ("GOI") related to its particular advance licenses, a letter from the GOI releasing Essar from its obligation to pay duties upon completion of the required exports for each advance license, "including the appropriate linkage between imports and exports[,]" bank realization certificates confirming inward remittance of export proceeds, and bills of lading confirming shipment to the United States.  See Remand Results, p. 4, referencing Essar's August 17, 2011 Response.  To prove that duty-free import of raw materials took place prior to exportation of its finished goods, Essar "submitted each shipping bill that contains an endorsement that specifies the advance license number and date."  Id. at 4-5 (citation omitted).  ITA then preliminarily determined Essar had provided sufficient proof of complete removal of the contingent liability for deferred import duties under the GOI advance license program.  See id., referencing Slip Op. 11-66, p. 12.

At that point, the domestic-industry petitioners cum plaintiffs United States Steel Corporation ("USSC") and Nucor Corporation requested that the agency deny Essar's duty-drawback claim with respect to one particular U.S. invoice, arguing the company did not provide export documentation linking that invoice to duty drawback under any of Essar's advance licenses and that the documentation it provided shows the particular claimed advance license identifies other invoices in the database but fails to indicate that sales pursuant to the one invoice were purportedly made pursuant to that advance license. See id. at 5-6. ITA agreed "nothing on the record links exports pursuant to that invoice to any of Essar's advance licenses" and thus disallowed the duty-drawback claim on exports pursuant to that particular invoice, but otherwise allowed the claim(s) as to the other documented export invoices. See id. at 6-7. See also Memorandum to File from V. Cho, Case Analyst, "Remand of the 2005-2006 AD Admin. Rev. of Certain Hot-Rolled Carbon Steel Flat Products from India: Calculation Memorandum for Essar Steel Ltd.", p. 4 (Oct. 3, 2011) ("CalcMemo") (Essar failed to "report the export documents that link [a particular] invoice . . . to the duty drawback under its advance license number"). Confidential Record Document ("ConfDoc") 53. See Def's Conf. Appx., Tab A.

A

With respect to the single disallowed invoice, Essar argues it satisfied its burdens of production and persuasion on its claim for duty drawback. The evidence of record, however, does not support it. Essar provided a copy of the invoice and a list of invoices purportedly related to a particular advance license, but the one in question is not among those listed for that advance license. See Essar's Aug. 17, 2011 Supplemental Questionnaire Response. See also Nucor Corp. Appx. to Nov. 2, 2011 Comments, Tab 7. Essar's attempt to establish a connection, by providing a list of exports and arguing that invoices are related to shipping bills by quantity and shipping bill number, fails because the invoice number is not actually listed on the bank certificates of export and realization. Lacking from the record is a copy of the relevant shipping bill, and therefore ITA found no demonstrable connection between the invoice and the relevant advance license.

Substantial evidence on the record supports the Remand Results as to the allowable extent of Essar's eligible duty-drawback claim, which must therefore be, and hereby are, sustained in regard thereto.

B

ITA having permitted Essar's duty-drawback claim in part and adjusted its export price ("EP") as a result, USSC and Nucor argue the agency should also have made a corresponding adjustment by increasing Essar's cost of production in accordance with the change in ITA policy recently upheld in <u>Saha Thai Steel Pipe (Public) Co. v. United States</u>, 635 F.3d 1335, 1341-44 (Fed.Cir. 2011). The agency denied their "claim", relying on <u>Dorbest Ltd. v. United States</u>, 604 F.3d 1363 (Fed.Cir. 2010), reasoning the matter should have been raised in the original proceeding and concluding it was either waived or not administratively exhausted. <u>See</u> <u>Remand Results</u>, p. 8 and 604 F.3d at 1375 (holding respondent failed to exhaust administrative remedies when it did not challenge omission from methodology in its administrative case brief, even though it raised the issue in rebuttal brief and again during ministerial comment period).

Relying on <u>Qingdao Taifa Group Co. v. United States</u>, 33 CIT ___, ___, 637 F.Supp.2d 1231, 1237 (2009), the plaintiffs deny that exhaustion or waiver is applicable because the preliminary-administrative-review determination denied Essar's duty-drawback claim, which meant ITA had to re-open the record on remand in search of evidentiary support therefor, and that was the first instance the matter of its calculation methodology became of moment.

The defendant responds that (1) neither USSC nor Nucor sought to amend its complaint to add a new count to address the issue, (2) the change in administrative practice affirmed in Saha Thai occurred after the completed Final Results, supra, (3) the Supreme Court in Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519 (1978), "expressly held that . . . consideration of extra-record developments would lead to never-ending administrative proceedings and subsequent [sic] judicial review"[1], and (4) the only exception to the "record rule" is Home Prods. Int'l v. United States, 633 F.3d 1369 (Fed.Cir. 2011), wherein a litigant presented "clear and convincing evidence establishing a prima facie case of fraud." Def's Resp. to Comments Upon the Remand Determ., pp. 8-9. Summarizing, it argues,

---

[1] **Videlicet**:

"Administrative consideration of evidence . . . always creates a gap between when the time the record is closed and the time the administrative decision is promulgated [and, we might add, the time the decision is judicially reviewed]. If upon the coming down of the order litigants might demand rehearings as a matter of law because some new circumstance has arisen, some new trend has been observed, or some new fact discovered, there would be little hope that the administrative process could ever be consummated in an order that would not be subject to reopening."

435 U.S. at 554-55, quoting ICC v. Jersey City, 322 U.S. 503, 514 (1944).

>       [i]n point of fact, nothing changed from the final
>       results published in June 2008 to Commerce's remand
>       redetermination released October 2011 with respect to
>       Essar's duty drawback adjustment. Commerce continued to
>       grant Essar its duty drawback offset. The claim that
>       Essar's cost of manufacturing should have been adjusted
>       should have been raised when US Steel and Nucor
>       challenged Commerce's Final Results in 2008. At no point
>       did US Steel or Nucor amend their complaint to add a new
>       count. They do not attempt to do so now. Accordingly,
>       this issue was settled with the final results and
>       later-in-time case law does not resuscitate waived
>       arguments. Doing so here would run contrary to the
>       Supreme Court's holding in Vermont Yankee. . . .
>       Commerce properly limited its decision in the remand
>       redetermination to the specific factual issue remanded by
>       the Court.

Id. at 10.

To the extent it is arguing ITA's hands were tied by a "record rule" vis-à-vis application of its new policy to a matter remanded for reconsideration, the argument misstates the law. See e.g., Tung Mung Dev. Co. v. United States, 354 F.3d 1371, 1378-79 (Fed.Cir. 2004) (any errors in remand orders do not survive ITA decisions to adopt a new policy; the Supreme Court "has repeatedly emphasized[] the Chevron doctrine contemplates that agencies can and will abandon existing policies and substitute new approaches" as necessary, and including on remand); SKF USA Inc. v. United States, 254 F.3d 1022, 1030 (Fed.Cir. 2001) ("an agency must be allowed to assess 'the wisdom of its policy on a continuing basis'", quoting Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 864 (1984)).

The Remand Results correctly note the specific question on remand was "whether record evidence proves Essar's contingent liability for deferred import duties under the duty drawback program has been removed or permanently excused". But this court's order did not state "without considering any calculation changes should [ITA] continue to grant the duty drawback adjustment." See Remand Results, p. 8, referencing Slip Op. 11-66, p. 9. And, in point of fact, something has changed. Whereas ITA's original duty-drawback determination rested upon an insufficient premise, it now rests on firmer footing. Even though the result is the same, the remand determination replaced the original determination as a matter of law. See, e.g., Decca Hospitality Furnishings, LLC v. United States, 30 CIT 357, 363 and 427 F.Supp.2d 1249, 1255, n. 11 (2006).

The defendant claims the plaintiffs "had the opportunity to raise their arguments in their case briefs in the administrative review", but the matter was not a problem of exhaustion or waiver: informing ITA that it must apply its newly-announced practice (of adding exempted duties to the respondent's costs of production and/or constructed value when ITA adjusts EP to account for those exemptions) was not the plaintiff-petitioners' burden.

It is axiomatic that agencies must follow their own announced or established practices, or else provide justifiable reasoning for deviation therefrom. E.g., SKF USA, Inc. v. United States, 537 F.3d 1373 (Fed.Cir. 2008); Allegheny Ludlum Corp. v. United States, 346 F.3d 1368 (Fed.Cir. 2003). ITA applied the new practice on numerous occasions by the time this matter was remanded[2], and, as noted, the practice was recently upheld by the Court of Appeals for the Federal Circuit in Saha Thai, supra, 635 F.3d at 1341-44, of which the agency is presumed to have had notice. This being the case, the burden on remand was on ITA to abide its new practice or explain deviation therefrom.

---

[2] See the Issues and Decision Memoranda accompanying Ball Bearings and Parts Thereof from France, Germany, and Italy, 76 Fed. Reg. 52,937 (Aug. 24, 2011) (final results of antidumping administrative and changed-circumstances reviews) at cmt. 8; Polyethylene Retail Carrier Bags from Thailand, 76 Fed.Reg. 12,700 (March 8, 2011) (final results of antidumping-duty administrative review) at cmt. 5; Circular Welded Carbon Steel Pipes and Tubes from Thailand, 75 Fed.Reg. 64,696 (Oct. 20, 2010) (final results of antidumping-duty administrative review) at cmt. 2; Certain Welded Carbon Steel Pipe and Tube from Turkey, 75 Fed.Reg. 64,250. (Oct. 19, 2010) (final results of antidumping-duty administrative review) at cmt. 3; Certain Steel Concrete Reinforcing Bars from Turkey, 74 Fed.Reg. 45,611 (Sept. 3, 2009) (final results and final partial rescission of antidumping-duty administrative review) at cmts. 1 & 2; and Circular Welded Carbon Steel Pipes and Tubes from Thailand, 73 Fed.Reg. 61,019 (Oct. 15, 2008) (final results of antidumping-duty administrative review) at cmt. 5.

The agency is not to be faulted, of course, for following a strict construction of the terms of the remand order, but its applied duty-drawback methodology in the context of Essar's claim cannot be sustained on the record of the Remand Results at this point. They therefore must be, and hereby are, remanded for application of the new policy or reasonable explanation of inapplicability.

C

Essar's claim for duty drawback having been allowed in part, it and ITA additionally agree the Remand Results should be remanded again to allow correction of a certain ministerial error in computer programming (that inadvertently resulted in setting "DTYDRAWU" to zero for all sales, not just for the one invoice in question). The Remand Results are therefore hereby further remanded for correction thereof.

II

The remaining comments concern ITA's determination of the "date of sale" for Essar's EP sales. The statute does not specify the manner in which it shall determine such a date. The Statement of Administrative Action approved by Congress as part of the Uruguay Round Agreements Act explains that it is the "date when the

material terms of sale are established", i.e., price, quantity, delivery terms, payment terms, and tolerances. See Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, p. 810.  Normally, ITA presumes the date of invoice as the EP sale date, but the presumption is rebuttable if and when the agency is "satisfied that a different date better reflects the date on which the exporter or producer establishes the material terms of sale."[3] See also Antidumping Duties; Countervailing Duties, 62 Fed.Reg. 27,296, 27,349 (Dep't of Comm. May 19, 1997) ("If [ITA] is presented with satisfactory evidence that the material terms of sale are finally established on a date other than the date of invoice, [it] will use that alternative date as the date of sale"). Any inquiry is intended to be flexible. See, e.g., Allied Tube and Conduit Corp. v. United States, 24 CIT 1357, 1370, 127 F.Supp.2d 207, 219 (2000) (Congress "has expressed its intent that, for antidumping purposes, the date of sale be flexible so as to

---

[3]  19 C.F.R. §351.401(i) provides as follows:

. . . In identifying the date of sale of the subject merchandise or foreign like product, the Secretary normally will use the date of invoice, as recorded in the exporter or producer's records kept in the ordinary course of business.  However, the Secretary may use a date other than the date of invoice if []he . . . is satisfied that a different date better reflects the date on which the exporter or producer establishes the material terms of sale.

Court No. 08-00216                                                      Page 13

accurately reflect the true date on which the material elements of sale were established"); <u>Sahaviriya Steel Indus. Pub. Co. v. United States</u>, 34 CIT \_\_\_, \_\_\_, 714 F.Supp.2d 1263, 1280 (2010) ("Flexibility is the cornerstone of Commerce's date of sale analysis").

Essar argues the <u>Remand Results</u> incorrectly use invoice date as its EP sale date. It contends the correct date is the date of the letter of credit, as determined in the <u>Final Results</u>, wherein ITA reasoned,

> for Essar's EP sales, the material terms of sale are set at the time of the sales contract, but are occasionally changed when the letter of credit is issued. Because the letter of credit is issued after the sales contract, any changes to the letter of credit would also signal a departure from the sales contract.[ ] Petitioners point to instances where material terms changed after the letter of credit was issued. In these instances, the original letter of credit was amended and we used the amended letter of credit. Thus, for the instant review, the letter of credit is a better test than the sales contract for when the terms of sale are set. Moreover, in all circumstances, the invoice is issued after the letter of credit, or in some instances the amended letter of credit, when the merchandise is shipped and the essential terms are never changed between the letter of credit, or the amended letter of credit, and the invoice.

Issues and Decision Memorandum accompanying <u>Final Results</u>, 73 Fed. Reg. 31,961, cmt. 21 (footnote omitted), PDoc 180.

In the Remand Results, page 9, ITA changed its position and determined "the material terms of sale were not fixed on the letter of credit date or amended letter of credit date." Because of multiple instances of price and quantity being invoiced beyond the tolerances in the sales contracts, the agency determined there was no "meeting of the minds" as of the letter-of-credit date or amended letter-of-credit date and concluded (essentially) Essar had not overcome the presumption in favor of using the date of invoice as the EP sales date. See Remand Results, pp. 9-10.

Essar does not challenge ITA's discretion as to the appropriate date of sale or the regulatory presumption in favor of invoice date, but, of course, it is the respondent's burden to present sufficient evidence to establish that the material terms are set at a different time if it wishes to overcome that presumption. See, e.g., Sahaviriya Steel, 34 CIT at ___, 714 F.Supp.2d at 1279; Nakornthai Strip Mill Public Co. v. United States, 33 CIT ___, ___, 614 F.Supp.2d 1323, 1334 (2009) ("Nakornthai III"). Essar's attempt involves pointing to the unchanged evidentiary record between the Final Results and the Remand Results and arguing only one invoice had an overall quantity change of more than the tolerance of the letter of credit. It contends that the decisions ITA relied upon for support,

Nakornthai III and Nucor Corp. v. United States, 33 CIT ___, ___, 612 F.Supp.2d 1264, 1271 (2009), involved only limited changes between invoice and letter-of-credit issuance and that these decisions actually support its position because its record of changes consists of only "two items out of approximately 280", which Essar contends does not amount to substantial evidence but proof of the correctness of ITA's original position in the Final Results.  See generally Def-Int. Essar Steel Ltd's Comments . . . Pursuant to Court Remand, pp. 4-10.

The "two items" were apparently of greater impact than Essar represents.  ITA addressed the reliance on Nakornthai III and Nucor by explaining that "the material term of sale changed on one contract" in each of those matters, whereas "Essar's material terms of sale changed on many transactions [by] contrast".  Remand Results, p. 11, referencing Nakornthai III, 33 CIT at ___, 614 F.Supp.2d at 1326 ("one U.S. sale of hot-rolled steel pursuant to a contract" that was changed), and Nucor, 33 CIT at ___, 612 F.Supp.2d at 1301 ("a price change as to one of ICDAS' U.S. contracts").

The standard is whether ITA's selection of the presumptive date of sale is unsupported by substantial evidence.  See 19 U.S.C. §1516a(b)(1)(B)(i);  Allied Tube, supra, 24 CIT at

1373, 127 F.Supp.2d at 220-21.  Applying it herein, the court finds adequate support for the agency's decision, given the detailed changes in material terms of sale between the letters of credit and the related invoices.  See Remand Results, pp. 9-10 ("Essar's material terms of sale were altered outside of the built-in tolerances in the sales contracts and those changes occurred up to the invoices in Essar's submitted sales documentation"); Def's Conf. Appx., Tab A (CalcMemo), Tab B (Essar's Aug. 16, 2007 Questionnaire Response, ConfDoc 33); Nucor's Conf. Appx., Tab 7 (copies of Essar's letters of credit and invoices).  Hence, the Remand Results can be, and they hereby are, sustained as to ITA's selection of the date of intervenor-defendant Essar's EP sales.

                                III

The defendant may have until May 25, 2012 to amend and correct the Remand Results in accordance with the foregoing and report the results thereof to the parties and the court.

So ordered.

Decided:  New York, New York
          April 11, 2012

                                         /s/ Thomas J. Aquilino, Jr.
                                              Senior Judge